IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIMMY C. HEASLET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-332-DES |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jimmy C. Heaslet ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.   Claimant's Background and Procedural History

In January 2020, Claimant protectively applied for disability insurance benefits under Title II of the Act. (R. 16, 192-95).  Claimant alleges he has been unable to work since January 1, 2016, due to osteoarthritis, a hernia, and hypertension. (R. 192, 224).  Claimant was 64 years old on the date of the ALJ's decision. (R. 24, 32, 192).  He has a high school education, vocational training, and past work as a numerical control tool programmer, CNC machinist, and chucking and sawing machine operator. (R. 37, 55, 225).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 62-93, 117-18).  ALJ Michael Mannes conducted an administrative hearing and issued a decision on June 14, 2022, finding Claimant not disabled. (R. 16-24, 30-59).  The Appeals Council denied review on September 27, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 404.981.  Claimant filed this appeal on November 22, 2022. (Docket No. 2).

## III.   The ALJ's Decision

In his decision, the ALJ found Claimant last met the insured requirements for Title II purposes on December 31, 2020. (R. 19).  The ALJ then found at step one that Claimant had not engaged in substantial gainful activity between the alleged onset date of January 1, 2016, and his date last insured. *Id.* At step two, the ALJ found Claimant had the severe impairments of degenerative joint disease, degenerative disc disease, and chronic infections of skin or mucous membranes. *Id.* At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. *Id.*

Before proceeding to step four, the ALJ determined Plaintiff had the RFC, through his date last insured, to perform a limited range of medium work as defined in 20 C.F.R. § 404.1567(c) with the following non-exertional limitations:

> occasionally climbing ramps or stairs[;] occasionally climbing ladders, ropes or scaffolds [;] frequently balancing, stooping, kneeling, crouching or crawling [;] frequently handling and fingering bilaterally [;] and must avoid frequent exposure to extreme cold.

(R. 19-20). The ALJ provided a summary of the evidence that went into this finding. (R. 20-21).

At step four, the ALJ concluded that Claimant could return to his past relevant work as a numerical control tool programmer and chucking and sawing machine operator as actually and generally performed. (R. 22). At step five, the ALJ alternatively found that Claimant could also perform other work existing in significant numbers in the national economy, including stores laborer, janitor, and machine feeder. (R. 22-23). Accordingly, the ALJ concluded Claimant was not disabled through his date last insured of December 31, 2020. (R. 25).

**IV.   Issues Presented**

Claimant contends the ALJ erred by failing to: (1) properly evaluate the medical source opinions of consultative examiner Dr. Julie Mahaney and state agency physicians Dr. William Bell and Dr. Scott Newton, and (2) present a hypothetical question to the VE that included all his limitations. The Court finds no error in the ALJ's decision.

**V.   Analysis**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A "medical opinion" is a statement from a medical source about what a claimant "can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 404.1513(a)(2). These abilities include the "ability to perform physical demands of work activities, such as sitting,

standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative functions, such as reaching, handling, stooping, or crouching)[.]" 20 C.F.R. § 404.1513(a)(2)(i).  If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding.  20 C.F.R. § 404.1520c(a), (c).  Supportability and consistency are the most important factors, and the ALJ must always explain how she considered those factors in the decision.[1]  20 C.F.R. § 404.1520c(b)(2).  The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical.  20 C.F.R. § 404.1520c(b)(2), (3).

### A.   Dr. Mahaney's Consultative Examination

Dr. Mahaney performed a physical consultative examination of Claimant on March 27, 2020.  (R. 385-92).  As relevant to this appeal, Claimant reported bilateral hand pain that he rated at 10 on a 10-point scale as well as decreased grip strength.  (R. 391).  Regarding Claimant's hands,

---

[1] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion.  20 C.F.R. § 404.1520c(c)(1).  Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. § 404.1520c(c)(2).

Dr. Mahaney found thenar muscle atrophy; sensory loss in Claimant's first three fingers; full range of motion in his wrists, fingers, and thumbs; reduced (4/5) grip strength bilaterally; and a right ulnar deviation. (R. 385, 392). Dr. Mahaney indicated Claimant could effectively oppose his thumbs to his fingertips, manipulate small objects, and effectively grasp tools such as a hammer. (R. 385).

In his written opinion, the ALJ summarized Dr. Mahaney's consultative examination findings, including her finding that Claimant had a right ulnar deviation and exhibited 4/5 grip strength. (R. 21). However, the ALJ did not specifically note Dr. Mahaney's findings that Claimant had sensory loss in his first three fingers bilaterally and thenar muscle atrophy, and Claimant asserts this is error. (Docket No. 12 at 4). It is well-established that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[is] position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). However, the ALJ is not required to discuss each piece of evidence in the record in detail. *See id.* at 1009-10. ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Although the ALJ did not specifically reference Dr. Mahaney's findings regarding Claimant's sensory loss and thenar muscle atrophy, he did discuss Dr. Mahaney's consultative examination where such findings were recorded, noting Claimant's slightly reduce grip strength. (R. 21). As discussed in more detail below, Claimant points to no work-related functional limitation identified by Dr. Mahaney. Notably, the ALJ also noted Claimant had full range of motion in his extremities and no evidence

6

of joint deformity or swelling in February 2021. (*Id.*). Moreover, the ALJ identified degenerative joint disease as a severe impairment at step two and explained that he included manipulative and environmental limitations in the RFC to account for Claimant's degenerative joint disease. (R. 21-22). Claimant fails to explain how Dr. Mahaney's additional findings regarding Claimant's hands demonstrate greater RFC limitations than the ALJ identified. Because Claimant points to no evidence the ALJ failed to consider, his arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for the Commissioner's." (citations omitted)).

    Claimant further contends the ALJ failed to evaluate the persuasiveness of Dr. Mahaney's medical opinion. (Docket No. 12 at 5-6). Contrary to Claimant's assertion, Dr. Mahaney's consultative evaluation does not contain a medical opinion as defined in the regulations. As set forth above, a medical opinion is a statement from a medical source about what a claimant can still do despite his impairments and whether he has work-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). In noting that Claimant had sensory loss in his first three fingers bilaterally and thenar muscle atrophy, Dr. Mahaney was not making a statement about what Claimant could still do, or whether he was limited in his work-related abilities; rather, she was simply reporting her observations of Claimant's performance during her examination. *See, e.g., Endriss v. Astrue,* 506 F. App'x 772, 778 (10th Cir. 2012 (unpublished) (noting that a finding of limited range of motion of the cervical spine, without an explanation of how such finding affects the claimant's ability to work, does not constitute a medical opinion that the ALJ must evaluate). Here, the ALJ summarized Dr. Mahaney's consultative examination findings, identified degenerative joint

disease as a severe impairment at step two, and explained that he included manipulative and environmental limitations in the RFC to account for Claimant's degenerative joint disease. The ALJ was not required to do more.

      **B.     ALJ Properly Evaluated the Opinions of Drs. Bell and Newton**

Claimant likewise contends that the ALJ erred in evaluating the opinions of state agency physicians Dr. Bell and Dr. Newton. (Docket No. 12 at 3-6). On April 16, 2020, state agency physician Dr. Bell reviewed the record and concluded that Claimant's osteoarthritis and back disorder were non-severe and did not significantly limit Claimant's ability to do basic work activities. (R. 67). State agency physician Dr. Newton affirmed Dr. Bell's findings on review in July 2020. (R. 77).

In discussing the opinion evidence, the ALJ found the state agency physicians' opinions that Claimant had no severe physical impairments unpersuasive, because their assessments were unsupported by the findings of reduced grip strength and were inconsistent with the longitudinal evidence of record, including imaging showing some degenerative disc disease and degenerative joint disease as well as Claimant's repeated reports of pain. (R. 21). The ALJ thus included degenerative disc disease and degenerative joint disease among Claimant's severe impairments.

Claimant contends the ALJ failed to explain how he considered the consistency factor as part of his evaluation of the state agency physicians' opinions. The Court is perplexed by this argument as the ALJ specifically found the state agency physicians' opinion that Claimant had no severe physical impairments was <u>inconsistent</u> with the longitudinal evidence of record and gave specific examples, including objective imaging and Claimant's subjectively reported symptoms. (R. 21). Moreover, the ALJ's RFC was more restrictive than every medical source opinion of record, all of which identified no work-related limitations. There is no "controlling authority

holding that the full adverse force of a medical opinion cannot be moderated favorably" to a claimant. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (rejecting the argument that "an explanation for extending the claimant such a benefit" is required). Indeed, "if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit." *Id.*

      C.      **ALJ's Hypothetical Question was Proper**

Finally, Claimant contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including the additional limitations he claims. (Docket No. 12 at 6-7). For the reasons set forth in Parts V.A. and V.B. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper. Claimant's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

**VI.**    **Conclusion**

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 2nd day of February, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE